IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

Deborah L. Bucholz, )
 )
                     Plaintiff, )
 )
v. ) Civil No. 3:04cv123
 )
JoAnne B. Barnhart, Commissioner of )
Social Security, )
 )
                     Defendant. )

FILED
MAR 3 2006
EDWARD J. KLECKER, CLERK
U.S. DISTRICT COURT-NORTH DAKOTA

## REPORT AND RECOMMENDATION

Plaintiff Deborah L Bucholz (hereinafter "Bucholz," "claimant" or "plaintiff") initiated this action under 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits. Before the court are both parties' motions for summary judgment. (Doc. #10 and Doc. #12). For the reasons articulated in this memorandum, the magistrate judge recommends that defendant's motion be **GRANTED** and the Commissioner's final decision be affirmed.

### I. Background

Plaintiff filed an application for disability benefits on June 26, 2002, alleging a disability onset date of July 1, 2000. Accordingly, claimant was required to prove disability prior to this date. Her claim was denied initially and on reconsideration. Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). An administrative hearing was held on October 14, 2003. On May 12, 2004, the ALJ issued a decision finding that the plaintiff "was not under a 'disability,' as defined in the Social

1

Security Act, at any time through the date of this decision (20 CFR § 404.1520(g))."
Plaintiff timely requested a review of the ALJ's decision by the Appeals Council. (Tr. 11). On September 14, 2004, the Appeals Council denied plaintiff's request for review, affirming the decision of the ALJ as the final decision of the Commissioner. (Tr. 8).

## II. Discussion

Plaintiff applied for disability benefits, alleging an inability to work due to a plethora of physical and psychological problems including fibromyalgia, hypertension, chronic depression and anxiety, chronic and debilitating migraine headaches, significant environmental allergies, and irritable bowel syndrome. (Tr. 19). At the time of the hearing plaintiff was a 39 year old mother of two. She has a high school education, plus two years post-secondary education, and has past work experience as a dental assistant. After the alleged onset of her disability, plaintiff continued to work part-time, primarily from her home, in marketing and scheduling for a chiropractic clinic in exchange for treatments, until March 2002, when she stopped working completely. The Social Security Administration considered this work an unsuccessful work attempt, although the ALJ questioned this finding because of the value of the chiropractic treatment received as barter for her services. (Tr. 20, 122).

Under the Social Security Act, an individual is "disabled" if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A) (Supp. 1997). The impairment(s) must be so severe that the applicant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B) (Supp. 1997).

The Administrative Law Judge evaluated Bucholz's claim according to the five-step sequential analysis prescribed by the Social Security regulations. See 20 C.F.R. § 416.920(a) (1997). The first step is to determine whether the applicant is engaged in substantial gainful employment. If the applicant is so engaged, there is no disability. If, however, the applicant is not engaged in substantial gainful employment, the second step is to consider whether the applicant has an impairment or combination of impairments that significantly limit his or her ability to perform basic work activities. If there is no limiting effect, the applicant is not disabled. But, if the applicant is significantly limited by his or her impairment(s), the third step is to determine whether the impairments meet or equal a listed impairment. If the impairments do meet or equal a listed impairment, the applicant is disabled. The fourth step is to determine how the impairments affect the applicant's ability to perform past relevant work. The applicant is not disabled if he or she is still able to perform past relevant work. Finally, the fifth step is to determine whether the applicant can perform other work. If the applicant cannot perform other work, the applicant is disabled.

The applicant bears the burden of proving disability. Clark v. Shalala, 28 F.3d 828, 830 (8th Cir. 1994). "However, if the claimant can demonstrate that []he is unable to do past relevant work, and thereby reaches the fifth step in the process, the burden shifts to the [Commissioner], who must show that substantial gainful activity exists in the national economy which the claimant can perform." Id.

The ALJ found that claimant does have severe impairments consisting of fibromyalgia, history of migraine headaches, history of irritable bowel syndrome, history of allergies, and mental disorders variously diagnosed as depressive disorder, anxiety related disorder, and depression secondary to general medical conditions. (Tr. 20). The ALJ concluded that these impairments in combination are "severe" within the meaning of the regulations, "but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix A, Subpart P, Regulations No. 4." (Tr. 20). After exhaustively summarizing the claimant's testimony, including her expressions of pain, recitation of daily activities, and the medical evidence, the ALJ found:

> [C]laimant's description as to the level, severity, and frequency of her pain and functional limitations resulting from such pain is not consistent with or supported by the medical evidence as a whole. Numerous inconsistencies between the claimant's written statements, written statements of third parties, and her hearing testimony compromise the claimant's overall credibility.

(Tr. 38).

The ALJ accepted the opinion of the State Agency's reviewing medical consultant, determining that Bucholz has the following residual functional capacity:

> [I]n spite of her impairments, the claimant is capable of lifting/carrying 10 pounds frequently and 20 pounds occasionally; sitting, standing, walking up to six hours in a workday with normal breaks; occasionally climbing, balancing, stooping, kneeling, crouching, and crawling; reaching in all directions; feeling, fingering for fine manipulation; and performing limited handling (gross manipulation). From a mental standpoint, [she] is not more than mildly limited in her ability to understand, remember, and carry out work instructions; relate to co-workers, supervisors and the public; and deal with changes in a routine work setting.

(Tr. 47).

4

Claimant established, supported by the vocational expert's testimony, that she could not perform any of her past relevant work. Recognizing the burden shifts to the Social Security Administration to demonstrate there are a significant number of jobs in the national economy that claimant can perform, the ALJ inquired of the vocational expert whether there are such jobs "for an individual of the claimant's age, education, past relevant work experience and residual functional capacity as determined." (Tr. 48). The vocational expert opined claimant could make vocational adjustment to other work and could be employed as a food/beverage order clerk, a charge account clerk, or a telephone quotation clerk, all of which exist in significant numbers in the national economy. (Tr. 48). Accordingly, the ALJ determined claimant is "not disabled." (Tr. 48).

Upon review of the pleadings and transcript of the record, the court can affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). To affirm the Commissioner's decision, the court must find that it is supported by substantial evidence appearing in the record as a whole. See id. The standard of review applied to determinations of the Commissioner is deferential, and the Commissioner's decision is to be affirmed if supported by substantial evidence in the record as a whole. Dixon v. Barnhart, 353 F.3d 602, 604 (8th Cir. 2003). Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's decision. Sultan v. Barnhart, 368 F. 3d 857, 862 (8th Cir. 2004). The review of the record is more than a search for evidence supporting the Commissioner's decision; the court must also take into account

5

matters that detract from the ALJ's findings and apply a balancing test to weigh evidence which is contradictory. Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991); Sobania v. Secretary of Health & Human Services, 879 F.2d 441, 444 (8th Cir. 1989). The Commissioner's decision is not subject to reversal simply because the reviewing court would have reached a different conclusion or because substantial evidence also exists which would support a contrary outcome. Sultan, 368 F.3d at 863. If after review the court is capable of drawing two inconsistent positions and one of those positions represents the Commissioner's findings, the decision must be affirmed. Dixon, 353 F.3d at 605.

Plaintiff's first argument for reversal of the Commissioner's decision is that the "ALJ failed to properly consider the opinions of severe limitations by Bucholz's treating doctors when he observed [the doctors' notes of] 'improvements' and thereby failed to consider the combination and severity of Bucholz's impairments. . . ." Brief in Support of Plaintiff's Motion for Summary Judgment, at 13. According to plaintiff, her doctors "also confirmed that **despite** those improvements Bucholz continued to be 'completely unable to work' (Tr. 371), and that her **reduction of physical activity** was largely responsible for any improvement . . . ." Brief in Support of Plaintiff's Motion for Summary Judgment, at 12-13. Plaintiff asserts that the allegedly inconsistent evidence noted by the ALJ "only **supports** the claimant's statement regarding her limitations and the severe nature of her debilitating pain." Id. at 5.

The ALJ's written opinion contains a thorough review of the medical record, and he notes numerous instances of what he found to be inconsistencies in the plaintiff's

testimony and the record as a whole. He specifically found that the "objective medical evidence is inconsistent with the claimant's statements and testimony that she has not had any significant pain relief with any modality; and the nature, location, onset, frequency, radiation and intensity of pain described is inconsistent with her reported improvement in pain to treating physicians." (Tr. 41).

Although claimant attempted to distance herself from Dr. Everett, and her stated reasons for not accurately reporting her condition to Dr. Everett are plausible, the magistrate judge accepts as substantial evidence the ALJ's decision that Dr. Everett's notes indicate considerable treatment success with medications. See Tr. 261 ("She has not wanted to come in for follow up because she feels she has made a great deal of progress."); Tr. 268 ("She has been doing exceedingly well for the last few months since starting allergy shots. These have allowed her to be off all medications completely except for her allergy shots. Her previous complaint of severe bowel dysfunction has disappeared.").

Additional inconsistencies found by the ALJ include the following: The ALJ noted that claimant's reports of employment to Dr. Nyhus in June 2000, in which she stated she had been working three jobs and planned to quit her job at the dental clinic, did not jibe with her testimony that she had never worked at three jobs. The ALJ also cited Dr. Nyhus's September 13, 2000 note showing plaintiff "otherwise has been healthy," and was absent from treatment for a period of time. (Tr. 281). Again on November 13, 2001, Dr. Nyhus noted, "Her health has been very good lately, although her fibromyalgia gives her chronic problems. She is doing much better with the new job that doesn't require quite as much physical activity and stress." (Tr. 276). The ALJ discounted

7

written statements of the claimant and third parties, dated August 2002, indicating she was experiencing severe pain. The ALJ found the statements contrary to the evidence, particularly since "she had not seen Dr. Nyhus or any other physician since May 2002 and she was not taking a lot of pain medication at the time." (Tr. 38). The ALJ questioned the weight of Dr. Nyhus's report dated December 18, 2002, for two reasons: First, the stated purpose of the examination was to support her application for disability benefits. Second, Dr. Nyhus suggested that further referrals may be warranted depending on the outcome, but he offered "no explanation as to why referrals were not made if indeed necessary prior to that time (see Exhibits 18F and 21 F)." (Tr. 39). Further, the ALJ noted an inconsistency in claimant's report to Dr. Carpenter on March 7, 2003 that there was no significant difference in her pain with a change of employment (Tr. 351) and Dr. Nyhus' statement that severity of "her symptoms had improved to some degree since not employed. . .." (Tr. 39). The ALJ noted that an increased dose of OxyContin resulted in reports of sleeping much better "(directly contrary to her testimony that she gets very little sleep)" (Tr. 39). Claimant's testimony at hearing of "a significant sleep disturbance" conflicts with Dr. Carpenter's note of March 7, 2003, which describes her sleep as "currently actually quite good with the current use of Zanaflex" (Tr. 351), and a note of March 14, 2003, which reflects she was sleeping much better although she continued to need Hydrocodone (along with OxyContin) during the day." (Tr.39). Finally, Dr. Carpenter opined that claimant "feels she has improved significantly with her, for the first time, having all day pain controlled to a degree." (Tr. 334). The ALJ found an inconsistency, recognizing that plaintiff's pain symptoms improve with the use of medication "which is again directly contrary to her hearing testimony." (Tr. 39).

It is the responsibility of the ALJ to weigh the evidence and to resolve the material conflicts in the record. See Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) (citations omitted) ("The ALJ may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole. It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'"). The magistrate judge recommends a finding that the ALJ has fulfilled this duty and based his decision on substantial evidence before him, despite substantial evidence to the contrary.

Claimant next argues that the ALJ erroneously found that she has only a mild restriction in daily living and social functioning due to mental impairments, particularly in light of the fact that her "current GAF" of 55 in November 2003 reflects severe mental impairments. The ALJ based his determination on claimant's GAF scores assigned by her treating psychiatrist and psychologists, stating her medically determinable mental impairments "result in 'mild' limitations in social and occupational functioning." (Tr. 46). The ALJ discredited claimant's testimony, stating:

> While she claims significant difficulties with concentration and memory, she testified she reads a book a day and psychological testing demonstrated no deficits in memory or concentration, although the claimant did make an attempt to demonstrate significant memory difficulties. The record does not demonstrate any episodes of decompensation or deterioration based on a mental disorder.

(Tr. 47).

The magistrate judge recommends a finding that there is substantial evidence in the record to support the ALJ's finding of a "mild" mental impairment. The ALJ afforded greater weight to assigned GAF scores of treating health professionals which are indicative of "some mild symptoms." (Tr. 45). Despite the ALJ's failure to complete a

9

Psychiatric Review Technique Form, he undertook a thorough analysis of the claim at issue. In addition, the State Agency psychologist, Dr. Hase, examined plaintiff's medical records and found no evidence of a medically determinable mental impairment as of September 2002. (Tr. 302).

Plaintiff asserts the ALJ failed to evaluate her subjective complaints of pain in accordance with Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). Under Polaski, the ALJ must consider all evidence presented that relates to plaintiff's subjective complaints in determining whether such complaints are credible evidence of a disability.[1] 739 F.2d at 1322. An ALJ may not reject a claimant's subjective complaints solely because of a lack of medical evidence. Benson v. Heckler, 780 F.2d 16, 17 (8th Cir. 1985). Furthermore, "before an ALJ may reject a claimant's subjective complaints of pain, the ALJ must make express credibility determinations" and "detail[] his reasons for discrediting the testimony." Ricketts v. Secretary of Health and Human Services, 902 F.2d 661, 664 (8th Cir. 1990); Brock v. Secretary of Health and Human Services, 791 F.2d 112, 114 (8th Cir. 1986). These specific findings "must demonstrate that [the ALJ] evaluated all the evidence" relevant to the claimant's pain. Herbert v. Heckler, 783 F.2d 128, 130 (8th Cir. 1986).

---

[1]

The ALJ must consider all evidence of plaintiff's subjective complaints, including prior work history, as it relates to:

> (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional limitations.

Polaski, 739 F.2d at 1322.

The ALJ found that plaintiff's statements of social isolation are inconsistent with her reported activities, which include attending church and Bible study, visiting her parents frequently, going out for dinner and a movie with her sister twice monthly, camping and going to the lake. (Tr. 45). The ALJ also noted that claimant testified she reads a book daily, demonstrating no difficulties with concentration or memory. (Tr. 45). Although these minimal activities themselves do not constitute substantial evidence that claimant can engage in substantial gainful activity, Harris v. Secretary of Dep't of Health and Human Services, 959 F.2d 723, 726 (8th Cir. 1992), they can be considered in assessing the credibility of the claimant's subjective complaints. Clark v. Shalala, 28 F.3d 828, 831 (8th Cir. 1994). It is the opinion of the magistrate judge that the ALJ properly assessed these activities in determining the claimant was not entirely credible.

The ALJ explained each of these findings in the body of his opinion and each has substantial support in the record. Even considering the existence of considerable evidence to the contrary, the magistrate judge recommends a finding that substantial evidence in the record supports the ALJ's findings and conclusions.

**IT IS HEREBY RECOMMENDED** plaintiff's Motion for Summary Judgment (Doc. # 10) be **DENIED** and defendant's Motion for Summary Judgment (Doc. # 12) be **GRANTED,** and judgment be entered affirming the decision of the Commissioner.

Pursuant to Local Rule 72.1(E)(4), any party may object to this recommendation within ten (10) days after being served with a copy hereof.

Dated this 2nd day of March, 2006.

Karen K. Klein
United States Magistrate Judge